SOUTHERN SURETY CO. v. WESTERN INDEMNITY CO. (No. 7575.)

(Court of Civil Appeals of Texas. Dallas. Nov. 18, 1916. Rehearing Denied Jan. 6, 1917.)

1. CONTRACTS ⊂∞233—CONSTRUCTION—MAINTENANCE OF AGENCY—EXPENSES.

Where one surety company sold to another its business under a contract which required the seller to maintain an agency to aid in transferring the business and to handle the business in a certain state during the year, and provided that the seller should receive a percentage of the commissions collected, the seller was required to pay the expenses of maintaining that agency and the salary of subagents thereunder, since those duties were imposed by the contract, so that the compensation therein fixed by the parties is controlling.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1098; Dec. Dig. ⊂∞233.]

2. CONTRACTS ⊂∞229(2) — COMPENSATION — PERCENTAGE OF PROFITS—COMPUTATION.

Where a surety company sold its pool excise business to another under a contract which entitled the seller to a percentage of the net profits for a year ending June 15th, and it appeared that the year in that business began October 1st, so that a portion of the premiums collected during the period of the contract was not earned at its expiration, the percentage of the profit was to the figured only on the portion of the premiums received which was actually earned at the expiration of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1045; Dec. Dig. ⊂∞229(2).]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by the Western Indemnity Company against the Southern Surety Company. Judgment for the plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Albert G. Moseley, of St. Louis, Mo., for appellant. Love & Taylor and Carden, Starling, Carden, Hemphill & Wallace, all of Dallas, for appellee.

RAINEY, C. J. Both appellant and appellee are incorporated. The appellee, as successor to the Federal Union Surety Company, on January 4, 1915, brought suit against appellant for a settlement on a contract between appellant and Federal Union Surety Company alleging appellant to be due it the sum of $4,896.30, and asks judgment therefor. Appellant answered, denying any indebtedness to appellee, but alleged appellee

indebted to it in the sum of $10,380.15, and asks for judgment therefor. A trial was had without the intervention of a jury, and judgment was entered against appellant for $4,893.30, from which this appeal is taken.

The case was tried upon an agreed statement of facts, a brief résumé of which made in appellant's brief we adopt, which is as follows:

The Southern Surety Company, hereinafter styled defendant, has its principal office in St. Louis and does a general surety business in the various states. The Western Indemnity Company, hereinafter styled plaintiff, does a casualty, fidelity business in Texas and other states.

On May 18, 1912, defendant and Federal Union Surety Company made a written contract whereby the latter transferred to defendant its surety business and good will and agency force and agreed to establish and maintain at its own expense a general agency office for the defendant at Indianapolis, Ind., for one year, which said agency was to co-operate with the Federal Union Surety Company in turning over the business and agency of the Federal Union Company to the defendant, and the defendant agreed to take over the business and agency of the Federal Union Company. By the terms of the contract the defendant agreed to pay the Federal Union Company for the business that the defendant should write for one year through the general agency and the said agency force of the Federal Union Company 35 per cent. of the gross premiums received by the defendant for writing two classes of business obtained through the general agency and agency force of the Federal Union Company, to wit: (a) Bonds in substitution or renewal of Federal Union Surety Company bonds theretofore written; and (b) the first bond written by the defendant for a person who had theretofore within 12 months patronized the Federal Union Company by contracting to pay it any premiums on account of a bond executed by it, by which was meant, according to the contract, the total gross premiums less return premiums, cancellations, and that portion of the premiums received which might be paid out for reinsurance. The contract also provided that, in lieu of commissions, defendant would pay the Federal Union Company 50 per cent. net profits derived by it from the pool excise business as might be done by the defendant within one year from June 15, 1912, in excess of 4 per cent. of such pool excise business, it being agreed that the net profits should be ascertained by subtracting from the gross premiums derived from the pool excise business for one year, commissions paid to agents, losses, cancellations, and returned premiums accrued during the year, on account of the business for which the gross premiums were collected, but no loss should be considered upon which claim had not been made within 60 days after the expiration of the year.

It was also agreed that the defendant would pay the Federal Union Company upon new business that might be written by the defendant through the agency established at Indianapolis and the agency force that might arise within the state of Indiana a general agent's commission of 35 per cent. of the gross premiums received, all expense of procuring such new business and all agents' commissions therefor to be paid by the agency or by the Federal Union Company; it being understood that the new business is not of a class or kind that may be embraced in any of the classes of business above mentioned. The contract provided that the defendant would handle the business hereinbefore mentioned from its St. Louis office, except the business arising in Indiana, at any time it should so desire, and that the agents then in the employ of defendant in Indiana and elsewhere were to continue to report the business secured by them direct to the St. Louis office of defendant, and that such agents were in no case to come under the supervison or control of the general agency to be established at Indianapolis by the Federal Union Surety Company, nor should such general agency receive commissions on business written through such other agents. Final settlement was to be made between the defendant and the Federal Union Company at the end of one year after June 15, 1912, and no losses, cancellations, returned premiums, or portions of premiums paid for reinsurance should be charged against the Federal Union Company that had not arisen out of the business within one year from and after June 15, 1912. The plaintiff succeeded to all the rights and interests that the Federal Union Surety at any time had under the contract referred to above, and became responsible for all liabilities of the Federal Union Company under the contract.

The gross premiums covered by the said contract between the defendant and the Federal Union Company, other than the pool excise business, and which were collected by the Federal Union Surety Company, amounted to $42,395.56, and it is agreed that the Federal Union Surety Company is entitled to the following credits, to wit:

| | |
|---|---:|
| Commission, at 35% | $14,838 44 |
| Cash paid by the Federal Union Surety Company to defendant... | 15,506 40 |
| Postage | 30 00 |
| Ætna Trust Company | 355 02 |
| Commission on outside business... | 446 82 |
| One-half of brokerage and one-half of license fees | 837 47 |
| Or a total of | $32,014 15 |

Leaving a balance which the defendant claims to be due it upon this part of the statement of $10,380.41.

The business provided for in the contract over which this controversy arose was transacted in the states of Indiana and New York, and are controlled by separate provisions.

[1] 1. Under the provisions relating to the

business to be done in Indiana the appellee claims the sum of $5,360.19 as expenses paid to subagents, and this sum was allowed by the trial court as just. Appellant insists that the court erred, in that it is contrary to the terms of the contract.

The contract, in effect, provides that the Federal Union Surety Company should maintain an agency in Indiana, pay all expenses, and account to appellant in consideration therefor; for such services it was to receive 35 per cent. of the gross premiums received. We are of the opinion that the terms of the contract providing for the consideration to be paid excludes the idea of any further amount being paid. The maintaining of an agency necessarily involves the expense of subagent, and, as appellee had contracted to maintain an agency, it must necessarily bear the burden thereof. Boren v. Life Ins. Co., 99 Ga. 238, 25 S. E. 314; Montgomery v. Life Ins. Co., 97 Fed. 913, 38 C. C. A. 553; Clark & Skyles on Agency, vol. 1, § 352.

The compensation having been fixed in the contract for the services rendered, it controls.

In Clark & Skyles, supra, the rule is thus stated:

"A contract of agency may expressly fix the amount of compensation, and may also fix the mode of payment and the conditions on the happening of which it shall be deemed to have been earned, and when this is the case the express terms of the contract are controlling. In other words, an express agreement as to compensation, if there is no breach of contract by the principal, will exclude any implied contract or custom to pay compensation otherwise than as agreed, and the agent cannot recover on a quantum meruit under such a contract. There is 'no standard of value that could be more satisfactory than that which the parties fix for themselves, and where there is a special contract fixing the terms and conditions on which one party shall serve another, in the absence of proof rescinding and altering it, it is conclusive.' Thus, if the contract provides that the principal shall pay the agent what the principal thinks right after the services are performed, the compensation fixed by the principal is conclusive, in the absence of fraud or bad faith, although considerably less than the reasonable value of the services."

It was error for the court to allow appellee the amount paid subagents in rendering his judgment.

[2] 2. Pertaining to the business in the state of New York there is a difference between the parties. The appellee claims that under the contract it is entitled to the sum of $9,916.52, which was allowed by the trial court; while the appellant concedes the amount to be $5,831.52 and charges that the evidence does not show a larger amount. Relating to this branch of the case, the contract reads:

"In lieu of commission, Southern Surety Company will pay to Federal Union Surety Company 50 per cent. of the net profits derived by it from the pool excise business of Federal Union Surety Company in the state of New York taken over by Southern Surety Company for one year from the date of acceptance hereof, it being understood that the 50 per cent. of the net profits herein provided for shall be calculated upon so much of such excise business as may be done by Southern Surety Company within one year from June 15, 1912, in excess of 4 per cent. of such pool excise business, which, it is hereby agreed, has been or will be assigned to Southern Surety Company in its own right. The net profits aforesaid shall be arrived at by subtracting from the gross premiums derived from such business for the period mentioned commissions paid to agents, losses, cancellations, and returned premiums accrued during such year on account of the business for which such gross premiums are collected, provided, however, that no loss shall be considered upon which the claim is not made within sixty days after the expiration of such year."

"Seventh. Complete and final settlement is to be made at the end of one year after June 15, 1912, between Southern Surety Company and Federal Union Surety Company, and no losses, cancellations, returned premiums, or portions of premiums paid for reinsurance shall be charged against Federal Union Surety Company that have not arisen out of the business hereinbefore described or that have not occurred within one year from and after June 15, 1912."

The excise agreement marked Exhibit B, to which appellant was a party, is a mutual reinsuring agreement to which the Federal Union Surety Company was not a party. It shows that the pool excise year began October 1st of each year and ended September 30th the following year. Appellee "in its first amended original petition contends that it has the right to recover a share in the whole business done by Southern Surety Company from October 1, 1912, to September 30, 1913. Southern Surety Company says that it is willing to pay such share of those earnings as are properly proportionable to the period of the year extending from October 1, 1912, to June 15, 1913, or such share as would be based upon seventeen twenty-fourths of the year's earnings." The contention of Southern Surety Company is that the interest of plaintiff attaches to only seventeen twenty-fourths of these gross premiums, for only seventeen twenty-fourths thereof would be earned by June 15, 1913, and that the remaining seven twenty-fourths thereof would not be earned until after June 15, 1913—in other words, would not be earned at all within the year covered by Exhibit A.

The excise business done began October 1, 1912, and ended September 30, 1913, and gross premiums paid in advance about October 1, 1912, amounted to the sum of $733,708.70. Said premiums were to run for the following 12 months. The commissions for said year were $127,174.14, and cancellations amounted to $5,980, or making the total deduction, $133,154.14, leaving net premiums to the amount of $600,554.86. This amount represents total premiums for the period of 12 months from October 1, 1912, to September 30, 1913.

On June 15, 1913, of these premiums only that portion actually earned up to that date should be considered in any statement of profits; in other words, while premiums may have all been paid within one month, they were paid in advance for a period of 12 months, and were only available for the computation of profits when actually earned;

so in arriving at the profits for 8½ months of this period it is only fair to take into account the earned premiums for this period or from October 1, 1912, to June 15, 1913, which, after making the proper deductions, would leave for the share of each $5,861.52. Deducting this amount from the amount of $10,380.41 to which appellant is entitled leaves due appellant $4,518.89, for which judgment in its favor is here rendered.

Believing the evidence shows that the trial court erred in rendering judgment in favor of appellee, it is reversed, and judgment here rendered for appellant for said sum of $4,518.89.

Reversed and rendered.